# The Chicago, Burlington and Quincy Railroad Co.

## v.

# The West Chicago Street Railroad Company.

*Filed at Ottawa May 15, 1895.*

1. HIGHWAYS—*extent of right of railway company in a street.* The fact that the tracks of a railroad company are laid across city streets and its cars permitted to pass over them gives the company no exclusive use of the crossing, but only a use to be enjoyed in common with the public.

2. SAME—*erections upon street—when not an additional servitude.* Erections upon a public street impose no additional servitude, where they aid and facilitate its use for the purposes of travel and transportation.

3. EMINENT DOMAIN—*street railway—permission to lay tracks not an additional easement.* Permission to a street railway company to lay its tracks in a public street is not a grant of an additional easement in the soil of the street, such road being merely a modification of the existing public use, adding thereto an additional mode of conveyance and inflicting no damage upon the owner of the fee.

4. SAME—*damage to owner of fee for laying tracks in street.* A railroad company owning the fee of a street is not entitled to compensation, as for an additional burden, upon the construction of street railway tracks along the street under permission from the city, where its own tracks are not injured.

5. SAME—*extent of right of street railway company in a street.* The interest of a street railway company in the street upon which its tracks are laid, although a valuable one, is part of the public easement in the street, accessory to the existing right in the public.

6. SAME—*rights of railroad company holding easement in street.* A railroad company which, by city ordinance, has acquired a permanent easement in streets crossed by its tracks, holds such easement in subordination to the right of the public to use such street, and is not entitled to compensation for the crossing of such tracks by a street railway laid along the street under permission from the city.

7. INJUNCTION—*against laying track in street—remedy at law.* An injunction will not lie at the suit of an abutting owner to restrain the laying of a street railway in a street the fee of which is in the city, as the damages which he may suffer are merely consequential, in the absence of a physical taking of the land, and the remedy is an action at law for damages.

*Chicago, Burlington and Quincy Railroad Co. v. West Chicago Street Railroad Co.* 54 Ill. App. 273, affirmed.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Richard S. Tuthill, Judge, presiding.

This is a bill filed by plaintiff in error, a steam railroad company, to enjoin the defendant in error, a street railroad company, from laying the tracks of the latter across the tracks of the former upon Ashland and Western avenues in the city of Chicago. The defendant company answered the bill admitting some of its allegations and denying others. Replication was filed to the answer. A preliminary injunction was granted upon the filing of the bill. The cause came on to be heard in the lower court upon motion by the defendant to dissolve the injunction on bill, answer and replication, and a decree was entered dissolving the injunction theretofore entered and dismissing the bill for want of equity. This decree has been affirmed by the Appellate Court, and it is here sought to review such judgment of affirmance by writ of error.

The bill alleges, that plaintiff in error, a corporation organized under the laws of Illinois, operates the main line of its railroad from Chicago westward across the Mississippi river to Colorado and Wyoming, and southward into Missouri, and northward into Minnesota, and owns or controls branch lines in Illinois; that, under an ordinance passed by the common council of the city of Chicago on December 15, 1862, it was given permission to lay tracks on a certain alley, and on such lands south thereof and of any continuation thereof as it might thereafter acquire, westward from the south branch of the Chicago river to the city limits, "with the right to cross all intervening streets;" that said ordinance was accepted by it, and thereunder in 1864 and prior thereto it constructed its main line from said branch to said limits and from time to time additional tracks, side-tracks and switches; that among the streets crossed were Ashland

and Western avenues, across which it has constructed and now operates two main passenger tracks and two main freight tracks, one of which tracks has been in use ever since 1864; that the West Chicago Street Railroad Company, a corporation organized under the laws of Illinois to operate street railways in the west division of said city, owns and operates, by cable and horse power, a system of street railways in said division; that the city council of said city, on March 10, 1892, passed an ordinance giving permission to said street railroad company to lay down and operate a single or double track street railroad in, along and across certain streets in said city, among which are Ashland and Western avenues including those portions of said avenues crossed by the tracks of plaintiff in error; that, by said ordinance and another passed on the same day, said street railroad company was authorized to operate its cars with animal or cable or electric power, or such other noiseless motor or power as should be approved by certain of the city authorities; that, at the place where the tracks of plaintiff in error cross said avenues, the fee of the land in said avenues to the center of the street is in plaintiff in error for a number of feet of the frontage on both sides, and for a certain other portion of the frontage on one side only; that the only right or title of the city or public in those portions of the avenues, adjoining the land of plaintiff in error, is "an easement to use the same as a street, acquired by dedication at common law, or by an alleged condemnation, and not under the statute;" that said street railway company threatens to lay its tracks across the railway tracks of plaintiff in error on said avenues without making compensation and without proceedings to condemn, and thereby to take and damage the property of plaintiff in error without just compensation, and for that purpose to tear up, displace and disconnect the tracks of plaintiff in error; that plaintiff in error has private property rights in said avenues at the points of

said crossings; that the laying of the tracks of defendant in error at said crossings will damage the business of plaintiff in error, and make the operation of its road more expensive and increase the danger to its employees and passengers, and to the general public.

The answer does not admit the extent of business done on the tracks of plaintiff in error as alleged in the bill; it admits the passage of the ordinance of March 10, 1892, and the authority thereby conferred as alleged; it does not admit the title of plaintiff in error in said avenues as alleged, but avers that, whether the title of the city to the land in said avenues at said crossing is an easement or a title in fee, said avenues are public streets under the control of the city council; that said control of the council, and its right to grant permission to use said streets for a street railway, are not limited by the nature of such title; that defendant claims the right to lay its tracks under said ordinances of 1892, and intends to lay its tracks and operate its street railroad cars by animal power on and along said avenues, including the portions thereof where complainant's tracks cross the same, but denies that it intends to take or damage complainant's property, or that it threatens to tear up, displace or disconnect complainant's tracks, and avers, that it intends to so lay its tracks and operate its cars, as not to increase the danger in the public use of said avenues at said crossings, and that it has attempted to make an amicable arrangement with complainant and has offered to construct said crossings at its own expense without disturbing complainant's tracks, and to keep the same in repair, and, at its own expense, to employ the necessary flagmen and policemen to guard said crossings so as to render them safe, but complainant refused to accept said offer or to make any agreement; the answer admits that complainant acquired a license to lay its tracks across said avenues under ordinances of said city, but denies that it has acquired any private rights therein, or that

it will suffer any such damage in its business or property by the construction of said crossings as will compel defendant to make compensation therefor, or that complainant by its said license acquired the right to exclude defendant from crossing its tracks under proper authority granted by the city council, or that any exclusive use of said streets was granted to or vested in complainant; and avers, that complainant's right in said streets is a right of use in common with the public, and subordinate to the use of the public, and subject to the control of the common council.

HERRICK, ALLEN & BOYESEN, for plaintiff in error:

The proposed occupation and use of those parts of Ashland avenue and Western avenue, of which the plaintiff in error .is the admitted owner of the fee, subject to the easement in favor of the public, will be an additional burden, entitling it to compensation. *Williams* v. *Railroad Co.* 16 N. Y. 97; *Railroad Co.* v. *Hartley,* 67 Ill. 439; *Presbyterian Society* v. *Railroad Co.* 3 Hill, 567; *Mahan* v. *Railroad Co.* 24 N. Y. 658; *Telegraph Co.* v. *Barnett,* 107 Ill. 507; *Craig* v. *Railroad Co.* 39 Barb. 494.

It is well settled that the right or interest acquired by a railroad company under a grant of the right to lay its tracks in a public street is an interest in the land itself,—an easement,—which, like any other interest in land, may be conveyed, is a subject of taxation, and can not be taken or damaged without compensation. *Railway Co.* v. *Village of Jefferson,* 14 Ill. App. 615; *Railroad Co.* v. *Railroad Co.* 15 id. 587; *Railroad Co.* v. *Railway Co.* 17 id. 141; *Chicago* v. *Baer,* 41 Ill. 306; *Parmelee* v. *Chicago,* 60 id. 268; *Gas Light Co.* v. *Town of Lake,* 130 id. 42, and cases cited; *Little* v. *Chicago,* 46 Ill. App. 534; *People* v. *O'Brien,* 111 N. Y. 38, and cases cited.

If the .right sought to be taken by a street railroad company is also an interest in the land,—an easement,— and not a mere privilege, the reasoning applies equally

to such a railroad as to any other. *Craig* v. *Railroad Co.* 39 Barb. 494.

A street railway has a prior right to the space covered by its tracks, and its cars have precedence over other vehicles. Pierce on Railroads, 252; Elliott on Roads, 577.

It has been expressly held that a street railroad company can prevent, by injunction, the permanent use of its track laid in a street by a rival omnibus line. Elliott on Roads, 582, and cases cited.

A grant, by ordinance, to maintain and operate railroad tracks in a street creates a perpetual easement,—an interest in the land itself,—which cannot be taken or damaged without just compensation. *Railway Co.* v. *Village of Jefferson*, 14 Ill. App. 621; *Railroad Co.* v. *Railroad Co.* 15 id. 587; *Railroad Co.* v. *Railway Co.* 115 Ill. 375 ; *Chicago* v. *Baer*, 41 id. 306 ; *Railroad Co.* v. *Railway Co.* 17 Ill. App. 141.

A grant to one railroad company of a right to cross the tracks of another railroad maintained in the street under authority of a previous ordinance, entitles the company whose right is prior in time to compensation, and an injunction will lie to prevent the crossing until the compensation is ascertained and paid. *Railroad Co.* v. *Railroad Co.* 15 Ill. App. 587; *Railroad Co.* v. *Railway Co.* 115 Ill. 375 ; *Railway Co.* v. *Village of Jefferson*, 14 Ill. App. 621; *Railroad Co.* v. *Railway Co.* 17 id. 141; *Chicago* v. *Baer*, 41 Ill. 306.

Plaintiff in error is entitled to an injunction to prevent the threatened injury until the compensation to which it is entitled is ascertained and paid in the manner provided by law. *Cobb* v. *Railroad Co.* 68 Ill. 235 ; *Railroad Co.* v. *Railroad Co.* 15 Ill. App. 587; Lewis on Eminent Domain, sec. 632, and authorities cited ; *Railroad Co.* v. *Railway Co.* 17 Ill. App. 141; High on Injunctions, sec. 625; *Railroad Co.* v. *Owings*, 15 Md. 199 ; *Craig* v. *Railroad Co.* 39 Barb. 506.

In any aspect of the case, the difference, if any, in the damage which will result, is one of degree, and not of kind; and the rule is well settled that if the property of the complainant is taken or damaged, within the meaning of the constitution, the question of the amount or measure of the damages will not be considered on bill for an injunction, but the court will grant the injunction as the only adequate remedy to preserve the constitutional right of the complainant to compensation before its property is taken, leaving the amount or measure of damages to be ascertained in the manner provided by law. ·*Railroad Co.* v. *Railway Co.* 17 Ill. App. 141; *Cobb* v. *Railroad Co.* 68 Ill. 235; *Craig* v. *Railroad Co.* 39 Barb. 506.

In the absence of proof the presumption is that the dedication vested the fee in the municipality. *Railway Co.* v. *Railway Co.* 81 Ill. 525; *Chicago* v. *Rumsey*, 87 id. 354; *Stetson* v. *Railroad Co.* 75 id. 75.

Egbert Jamieson, and George Hunt, for defendant in error:

Permission given by city ordinance to lay railroad tracks in the street is a license, and not a franchise. *Railway Co.* v. *People ex rel.* 73 Ill. 541.

The right granted to a railroad company to lay tracks in a street does not grant an exclusive use, but one to be enjoyed in common with the public. *Railroad Co.* v. *Reich*, 101 Ill. 157; *Dock Co.* v. *Garrity*, 115 id. 155; *Railroad Co.* v. *Wakefield*, 103 Mass. 263; *Railroad Co.* v. *Railroad Co.* 114 id. 91; *Railway Co.* v. *Railway Co.* 51 Cal. 583; *Railroad Co.* v. *Belleville*, 20 Ill. App. 580.

Mere priority of use or occupancy gives no priority of right to that which is free to all. *Railroad Co.* v. *Railway Co.* 105 Ill. 388; *Railway Co.* v. *Railway Co.* 30 Ohio St. 604; *Railroad Co.* v. *Railroad Co.* 121 Mass. 125.

A railroad company cannot object to the cars of another company crossing with its tracks where a highway crosses. *Railroad Co.* v. *Railroad Co.* 33 Barb. 420; *Rail-*

*road Co.* v. *Railroad Co.* 50 id. 309; *Railroad Co.* v. *Railroad Co.* 51 Cal. 583; *Railroad Co.* v. *Railroad Co.* 93 Ala. 505; 23 Am. & Eng. Ency. of Law, 995.

While the use of the crossing by the public may result in the stoppage or slower movement of trains and in the increased danger of accidents, the law allows no compensation or damages for these inconveniences. *Railway Co.* v. *Chicago*, 140 Ill. 309.

The rule is well settled that the damages must be real, tangible and proximate, and cannot be remote, contingent or conjectural. *Railroad Co.* v. *Railroad Co.* 33 Barb. 420; *Railway Co.* v. *Railway Co.* 105 Ill. 110; *Railroad Co.* v. *Railroad Co.* 50 Barb. 309.

Neither a person nor corporation is entitled to claim damages for obedience to a police regulation, or for obedience to a law enacted for the security of life and property. *Railroad Co.* v. *Railway Co.* 105 Ill. 388; *Railway Co.* v. *Chicago*, 140 id. 309.

The construction of a horse railway in a street is a legitimate use of the highway and an exercise of the right of public travel. It is generally held, therefore, that no additional burden is imposed, and the owner of the land, even though he own the fee of the street, can not recover. *Railroad Co.* v. *Railroad Co.* 20 N. J. Eq. 61; *Attorney General* v. *Railroad Co.* 125 Mass. 515; *Railroad Co.* v. *Railroad Co.* 64 Texas, 80.

We do not think the motor is the criterion—it is rather the use of the street. A change in the motor is not a change in the use. *Briggs* v. *Railroad Co.* 79 Me. 367; *Williams* v. *Railroad Co.* 41 Fed. Rep. 557.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

By permission of the common council of Chicago embodied in an ordinance passed in 1862, the plaintiff in error, a steam railroad company carrying both passengers and freight, laid its tracks across Ashland and Western

avenues in 1864, and has been operating its trains over said tracks ever since. It claims, that the city owns a mere easement in those avenues or streets at the points where its tracks cross the same, and that it owns the fee· subject to the easement in favor of the public. The defendant in error, a street railway company, under and by virtue of an ordinance of the common council of Chicago passed in 1892, has laid its tracks upon and along said avenues, and seeks to extend its tracks along said avenues across the tracks of plaintiff in error for the. purpose of propelling its street railroad cars thereon by animal power. It appears from the allegations of the bill, that Ashland and Western avenues were public streets under the control of the city of Chicago prior to 1862, and have been used as such public streets ever since that time. Plaintiff in error claims, that, by reason of its alleged ownership of the fee, the crossing of its tracks by those of the defendant in error will impose an additional servitude which entitles it to compensation.

It is not contended, nor alleged in the bill, that the laying of the tracks of the street railroad company across those of plaintiff in error will injure the property of plaintiff in error which abuts upon the streets, or will cause it any damage as an abutting owner in the way of shutting out light or air or preventing ingress and egress. The contention is, that plaintiff in error will suffer damage as owner of the fee of the street itself by reason of the embedding'of the street car tracks into the ground of the street. Counsel for plaintiff in error base the claim to damages upon two decisions heretofore rendered by this Court, towit: *I., B. & W. R. R. Co.* v. *Hartley*, 67 Ill. 439, and *Board of Trade Tel. Co.* v. *Barnett*, 107 id. 507.

In the first case, the action was trespass against a steam railroad company, which constructed its road, under the authority of an ordinance of the city of Bloomington, diagonally across Front street in that city within six inches or a foot of plaintiffs' enclosure at one corner, and

upon land the fee of which was in plaintiffs if they owned to the center of Front street, which had been an old highway before the limits of the city were extended so as to include it; in constructing the road-bed, the street was excavated four or five feet, necessitating the removal of a large amount of earth and the lowering of the grade in front of the enclosure of the plaintiffs, so as to leave their premises much higher than the grade, and rendering ingress and egress therefrom more difficult; it did not appear that the city owned the fee of the street, and the ownership by the plaintiffs of the fee of the land to the center of the old highway was not contested; the trespasses there complained of were committed before the adoption of the constitution of 1870, and the right to recover was not affected by the provisions of that constitution. A distinction was there drawn between cases where the fee of the street is in the city, and cases where the fee of the street is in the adjoining proprietor and the city has only an easement; and it was held, that, in the former cases, the owner of abutting property can not enjoin the laying of railroad tracks in the street if the city authorities having control thereof have granted permission to do so, and that such owner cannot recover any damage or compensation for the use of streets so occupied; but that, in the latter cases, the railroad company, if, in laying its tracks, it causes a private injury to him who owns the fee in the adjoining premises, must make good the damages sustained. While the decision in the *Hartley* case was based mainly upon the ground, that the adjoining proprietor owned the fee of the street subject to the easement, yet the facts show that the injury sustained was not so much an injury to the land under the street, as to the land abutting upon the street, which was damaged by the lowering of the grade and by the consequent difficulty of ingress thereto and egress therefrom.

But, while the *Hartley* case differs from the case at bar, in the fact that *there* there was damage to the abutting property, while here no damage to abutting property is claimed, yet the main distinction lies in the character of the railroad constructed in or across the street.   The railroad constructed diagonally across Front street in the case cited was a railroad for the passage of steam cars carrying freight and passengers, while here the tracks proposed to be constructed across the tracks of plaintiff in error are those of an ordinary street railroad. Ashland and Western avenues, being public streets under the control of the city, are subject to use by the public. The fact that the tracks of plaintiff in error are laid across said streets and that its freight and passenger cars are permitted by the city to pass over the same upon said tracks, gives plaintiff in error no exclusive use of the crossing, but only a use to be enjoyed in common with the public.   (*P., Ft. W. & C. R. R.* v. *Reich*, 101 Ill. 157).   A city has no right to authorize railroad tracks to be laid upon streets so as to exclude the other public uses of a street.   (*Ligare* v. *City of Chicago*, 139 Ill. 46).   It will not be denied, that pedestrians and carriages and wagons and omnibuses and other vehicles have a right to pass along these streets over and across the tracks of plaintiff in error.   A street car, running upon rails laid upon the surface of the street and used in the ordinary way under the regulations of the city authorities, is merely another sort of carriage.   The use of a street for a horse railway is such a use as falls within the purposes for which streets are dedicated, or acquired by condemnation.   (2 Dillon on Mun. Corp.—4 ed.—sec. 722).   The proprietor, when he dedicates the street or is paid for property to be so used, will be presumed to have contemplated such improved and convenient modes of use as are reasonably consistent with the use of the street for ordinary vehicles and in the usual modes.   (Idem).

The weight of authority is in favor of the position, that "a street railway is not an additional servitude even where the fee of the street is in the abutting owner." (2 Dillon on Mun. Corp.—4th ed.—sec. 723 (574), and cases cited in note 3). It is otherwise in the case of the construction of a steam railroad in a public street; a steam railway is regarded as an additional servitude. (Idem, sec. 725 (576)). In his work on Municipal Corporations, Judge Dillon thus clearly states the distinction here indicated: "The weight of judicial authority undoubtedly is, that, where the public have only an easement in streets, and the fee is retained by the adjacent owner, the legislature cannot, under the constitutional guarantee of private property, authorize an ordinary *steam railroad* to be constructed thereon, against the will of the adjoining owner, without compensation to him. In other words, such a railway, as usually constructed and operated, is an additional servitude. As to *street railroads*, constructed in the usual manner and operated under municipal regulation so as not to exclude the free passage of ordinary vehicles, the almost general, and, in the author's judgment, the sound judicial view is, that they do not create a new burden upon the land, and hence the legislature, no matter whether the fee is in the abutter or in the public, is not bound to, although it may, provide for compensation to the adjoining proprietor." (2 Dillon on Mun. Corp.—4th ed.—sec. 725 (576)). The courts of most of the States, except those of New York, hold that a street surface passenger railway, constructed at street grade in the usual manner, is not a new servitude upon the land for which the owners of the fee are entitled to compensation. (Booth's Street Railway Law, sec. 82). The use of the street by such a street railroad company being within the purposes for which streets are laid out and maintained, the abutting owner can recover no compensation for the damages resulting from such use, whether the fee is in him or in the city, provided the right of

ingress and egress and of passage and repassage is left reasonably free to him. (Lewis on Em. Dom. sec. 124; Elliott on Roads and Streets, pages 528, 529, 558). Streets are laid out in order that the public may enjoy the right of free passage in vehicles as well as on foot, and such vehicles may be carriages running on grooved tracks, or operated in the modes, or by the forces which an advanced civilization may require for the general convenience. (Pierce on Railroads, sec. 234; Cooley on Cons. Lim.— 6th ed.—page 683). The laying of a street railway in the streets of a city, and the running of cars thereon for the transportation of passengers, must be regarded as among the uses contemplated when the street was laid out; hence, the owner of abutting land, even though he owns the fee of the street, can only recover damages for such special and material injury as may be shown to have resulted to his property from the construction and operation of such railway. (23 Am. & Eng. Enc. of Law, page 954).

It appears here, that the defendant in error intended to lay its tracks and operate its cars by animal power only, although it had the right, under the ordinance of 1892, to use cable or electric power or other motive power. It also appears, that the tracks of defendant in error were to be laid without injury to the tracks or property of plaintiff in error and without expense to it. Where the crossing is made in the manner specified in the answer in this case, the usefulness of the railroad crossed is not in any manner impaired. (*C. & N. W. Ry. Co.* v. *Chicago*, 140 Ill. 309). "For the crossing of tracks at grade, without material injury, compensation is not allowed." (Booth on Street Railway Law, sec. 114). Damages are not allowable for increased delay or danger in crossing. Damages must be real, tangible and proximate, and not conjectural or speculative. (*P. & P. U. Ry. Co.* v. *P. & F. Ry. Co.* 105 Ill. 110; *C., B. & Q. R. R. Co.* v. *City of Chicago*, 149 id. 457).

It is to be remembered that when the ordinance of 1892 was passed granting to the street railway company permission to lay its tracks and operate its cars across the tracks of the steam railway company, Ashland and Western avenues, upon which the street car tracks were thus to be laid, already existed as public streets and had been used by the public for many years. Under its charter, the city of Chicago had the right to regulate the use of these streets, and to permit the construction of horse railroads therein, and to change the grade of railroad crossings. (Rev. Stat. chap. 24, art. 5, pars. 9, 24, 25). The permission to a street railway company to lay its tracks in a street already appropriated to public use is not the grant of a right to appropriate an additional easement in the soil of the street, but the construction of the street railroad is merely a mode of facilitating existing travel, and of modifying or changing the existing public use. There is thereby added an additional mode of conveyance to those already in use upon the street, and, where the street railroad is properly constructed, it inflicts no damage upon the adjoining proprietor who owns the fee of the street. (*Atty. Gen.* v. *Metropolitan R. R. Co.* 125 Mass. 515 ; *T. & P. Ry. Co.* v. *Rosedale Street Ry. Co.* 64 Tex. 80). The street car carries along the street such passengers as would otherwise be obliged to pass over it on foot or in other vehicles, and, therefore, the burden imposed upon the land under the street is the same in kind as was originally imposed on it when the street was opened. A steam railroad, as ordinarily operated, adds a new servitude to the street, because it prevents the use of the street in the usual modes, and interferes with and embarrasses the usual modes of travel, whereas the ordinary street railway furthers the original uses of the street by relieving the pressure of local travel. (*Taggart* v. *Newport Street Ry. Co.* 16 R. I. 669 ; *Halsey* v. *Rapid Transit St. Ry. Co.* 47 N. J. Eq. 380 ; *Buffalo R. & P. Ry. Co.* v. *DuBois Traction Pass. Ry. Co.* 149 Pa. St. 1).

It will not be denied that, whether the fee of a street is in the city or in the abutting owner, the city may, in the exercise of its power to control such street and regulate its use, lay gas and water pipes therein, construct drains and sewers therein, and dig reservoirs and cisterns therein. (24 Am. & Eng. Ency. of Law, pages 34, 114). Such uses more sensibly disturb the soil than the laying of street railway tracks. And yet it will not be said, that a city cannot make improvements of this kind in a street, the fee of which is in the abutting owner, without a condemnation proceeding and the making of compensation to such owner.

The other case relied upon by counsel, *Board of Trade Tel. Co. v. Barnett,* 107 Ill. 507, was an action of trespass, brought by an adjoining owner against a telegraph company to recover damages caused by the erection of telegraph poles upon an ordinary public highway, the fee of the highway being in the plaintiff subject to the easement of the public; the poles were erected under permission from the county board; it was held, that the right to erect them was not a part of the public easement in the highway, but was a new and additional burden upon the fee, for which the owner of the fee might maintain an action. We think that the *Barnett* case, like the *Hartley* case, is clearly distinguishable from the case at bar. Telegraph poles erected upon a highway serve no useful purpose in regard to the highway, and telegraph and telephone poles erected upon a street are not directly ancillary to the use of the street as such; for this reason they are held to be an additional servitude in the street. But it is otherwise where such erections aid and facilitate the use of a public street for the purposes of travel and transportation. In the latter case they impose no additional servitude.

In *Taggart* v. *Newport Street Railway Co. supra,* a bill was filed by owners of property abutting on certain streets in the city of Newport to enjoin a street railway

company from erecting in the streets in front of their property certain poles and wires, the poles being erected to support the wires over the tracks or rails of the company for the purpose of conducting the electricity to be used as a motor for the passenger cars traversing said tracks; in that case, it was contended, that the use of electricity for the operation of the street railway, and the erection of the poles as ancillary thereto, could not be sustained upon the alleged ground, that an additional servitude was thereby imposed upon the streets without providing for compensation to the owners of the fee of the streets; but the Supreme Court of Rhode Island there state the doctrine as being sustained by the greater weight of decisions that a railroad constructed in a street, and operated by steam in the usual manner, imposes a new servitude and entitles the owner of the fee to compensation, but that a street railway operated by horse power in the usual way does not impose a new servitude, or entitle the owner of the fee to additional compensation; and the court there extends the doctrine so as to apply what is said in regard to street railways operated by horse power to street railways operated by electricity; it was there held, that a street railway operated by electricity was not an additional servitude, and that, although telegraph and telephone poles and wires erected on streets and highways might constitute an additional servitude entitling the owners of the fee to additional compensation, yet such was not the case as to poles and wires erected and used for the service of a street railway for the reason already stated, namely, that the former are not, and the latter are, "directly ancillary to the uses of the streets as such, in that they communicate the power by which the street cars are propelled."

The ruling upon this subject in Rhode Island has been adopted in New Jersey in the case of *Halsey* v. *Rapid Transit Street Railway Co.* 47 N. J. Eq. 380, where it was

held that the placing of poles and wires in the street for the purpose of propelling cars by electricity did not impose a new servitude upon the land for the reasons, that the ownership by the abutting owner of the fee in the street, being subject to the public easement, is without beneficial interest; that, with respect to lands over which streets have been laid, the ownership for all substantial purposes is in the public; that, when lands are acquired for a public street, they are acquired for the purpose of providing a means of free passage common to all the people, and may be rightfully used in any way that will subserve that purpose, including such means as the improvements of the age and new wants, arising out of an increase in population or an enlargement of business, may render necessary; that the poles and wires, used to operate the street railway by electricity form part of the means by which a new power, to be substituted for animal power, is to be supplied for the propulsion of street cars; that such poles and wires are placed in the street "to aid the public in exercising their right of free passage over the street," and therefore impose no new burden on the land.

The same doctrine has been held by the Supreme Court of Pennsylvania in the recent case of *Buffalo R. & P. Ry. Co.* v. *DuBois Traction Pass. Ry. Co. supra.*

In view of what has been said, we are inclined to hold that, whether the power to be made use of by defendant in error in propelling its cars across the tracks of plaintiff in error was horse power as alleged in the answer, or whether it was any other of the powers authorized to be used by the ordinance of 1892, in either case the principles here discussed are applicable, and authorize the crossing of the tracks of plaintiff in error by the defendant in error, provided the crossing is made without injury to the tracks so crossed as stated in the answer herein.

The language used in *Moses* v. *P., Ft. W. & C. R. R. Co.* 21 Ill. 515, intimating that an injunction would lie against

the laying of a street railroad, if it would lie against the laying of a steam railroad, in the streets of a city, was merely by way of argument, and was not necessary to the decision of that case, and, hence, cannot be regarded as controlling the disposition of this case.

Counsel for plaintiff in error refer to certain decisions of this court, holding that, where a street railway company lays its tracks in a public street under an ordinance of the city, it has an interest in the street which can be sold and conveyed and made subject to the burden of special assessment; and that, therefore, a grant to the street railway company of this interest is a taking of the property of plaintiff in error as owner of the fee. Under the authorities already discussed, the . interest of the street railway company, although a valuable one, is a part of the easement of the public in the street; it is carved out of such easement; it is accessory and ancillary to the existing right, vested in the public, of passing over the street; by the granting of it no new easement is imposed upon the property of the owner of the fee, but the old easement, to which such property was already subject, is merely changed so as to be adapted to an improved mode of passage; "it is," as was said by the vice-chancellor in *Halsey* v. *Rapid Transit Street Ry. Co. supra*, "simply a user of a right already vested in the public, and consequently, by its exercise, nothing is taken from the abutting owners which can be made the basis of additional compensation."

It is also contended on behalf of plaintiff in error, that, by the ordinance of 1862 and its action under it, plaintiff in error acquired a perpetual easement in those parts of Ashland and Western avenues crossed by its tracks of which it did not own the fee, and that the crossing of its tracks by defendant in error will be an infringement upon the easement of plaintiff in error, which entitles it to compensation. This contention is disposed of by what has already been said. The plain-

tiff in error accepted the ordinance of 1862, and laid its tracks across the avenues thereunder, in subordination to the right of the public to pass along the avenues and over those parts thereof where its tracks crossed them. Its rights to the crossing are, and always have been, subject to the public easement in the streets and subject to the right of public passage over the same.   The propelling of street cars over the crossing was only a form of the exercise by the public of its right of passage, and, therefore, did not operate as any infringement upon the rights of plaintiff in error, or entitle it to any additional compensation.   The case of *C. & W. I. R. R. Co.* v. *E. C. Ry. Co.* 115 Ill. 375, has no application here.   In that case, there was a condemnation proceeding instituted by one steam railroad company against another to secure for the former the privilege of crossing the tracks of the latter, and the institution and prosecution of the proceeding admitted the right of the defending company to at least nominal damages, if no more.

Where the fee of the street is in the city, such damages, as the abutting owner may suffer from the laying of a railroad track in the street, are merely consequential, so far at least as they affect the property abutting on the street   In such case, as there is no physical taking of the land, injunction will not lie to enjoin the taking, the remedy being an action at law for damages. (*Stetson* v. *C. & E. R. R. Co.* 75 Ill. 74;   *Parker* v. *Catholic Bishop*, 146 id. 158).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*